## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LAWRENCE M. JARVIS and | ) | |
| LAWRENCE M. JARVIS, CHARTERED, | ) | |
| A Kansas Professional Corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | **Case No. 14-4096-JAR-GLR** |
| | ) | |
| v. | ) | |
| | ) | |
| L. DAVID STUBBS, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

### MEMORANDUM AND ORDER

Plaintiffs Lawrence M. Jarvis and Lawrence M. Jarvis, Chartered, filed this lawsuit in Shawnee County, Kansas alleging breach of contract, breach of the implied covenant of good faith and fair dealing, fraud in the inducement, extortion, and civil conspiracy.  Defendant L. David Stubbs removed the case to this Court on grounds of diversity jurisdiction (Doc. 1). Before the Court is Defendant's *pro se* Motion to Dismiss under Rule 12(b)(2) and 12(b)(6) for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. 5).[1]  Plaintiffs oppose the motion.  The Court has considered the briefs and the parties' submissions and is prepared to rule. As described more fully below, the Court denies Defendant's motion under Rule 12(b)(2), denies his motion under Rule 12(b)(6) with respect to Count One, and grants the motion to dismiss Counts Two through Six.

### I.      Factual Background

Drawing all reasonable inferences in favor of Plaintiffs, the following facts are taken

---

[1]Defendant originally moved to dismiss in state court under K.S.A. 60-212(b)(2) and (6).

from the Petition and attached exhibits, and the declarations and exhibits attached to the parties' briefs.  The Court does not consider any general or conclusory allegations unsupported by affidavit or other evidence.

This case arises out of a dispute over payment of legal fees.  Plaintiff Lawrence M. Jarvis is an attorney licensed to practice law in Kansas; Lawrence M. Jarvis, Chartered is a Kansas Professional Corporation.  Defendant L. David Stubbs, who is also an attorney, is a resident of Arkansas.  Stubbs was employed by Latco, Inc. ("Latco") as Director of Human Resources and General Counsel.  In August 2011, Stubbs retained Plaintiffs to represent Latco in Kansas to register a judgment Latco obtained in Arkansas against a Kansas corporation and two of its officers, at an hourly rate of $150, plus litigation expenses.

Plaintiffs registered the Arkansas judgment in Kansas, and sent Latco its statement for services rendered in the amount of $12,334.08, including expenses of $185.08.  Stubbs objected to this amount because the statement reflected a total of 23.79 billable hours, and took the position that per the agreement, Plaintiffs' fee should have been $3,568.50.  Plaintiffs allege that Stubbs admitted that he owes the sum of $3,753.58.

In November 2012, Plaintiffs filed a limited action lawsuit in Wyandotte County, Kansas against Stubbs and Latco.  Defendants successfully moved to transfer the case to Johnson County, Kansas, where it was dismissed without prejudice for lack of prosecution.  Plaintiffs then filed an action in Shawnee County, Kansas, against Defendant Stubbs, as Latco had filed for protection under Chapter 11 of the United States Bankruptcy Code.[2]  Stubbs then removed the

---

[2]The Court takes judicial notice that Latco, Inc. is the debtor in Case No. 13-bk-73160, filed in the Western District of Arkansas.  Latco's Chapter 11 Plan of Liquidation was confirmed on October 2, 2014, and Lawrence M. Jarvis is listed as an unsecured creditor in the amount of $2427.00.

state court action to this Court.[3]

Plaintiffs' Petition sets forth six causes of action against Defendant Stubbs.  Count One asserts a claim for breach of contract for failure to pay attorneys' fees in the amount of $3,753.58.  Count Two alleges that Stubbs breached the implied covenant of good faith and fair dealing by failing to advise Plaintiffs of the mathematical error in their bill for services, resulting in Plaintiffs needlessly filing a lawsuit; by failing to return Jarvis's phone call to discuss the bill; by not paying the bill after the error was discovered; and by agreeing to pay the bill only if Plaintiff would dismiss all other charges against him.  Count Three alleges that Stubbs represented to Plaintiffs that his client Latco was financially secure and then "stiffed" Plaintiffs for services rendered, and that Stubbs admitted to his breach of contract in a grievance filed with the Kansas Disciplinary Administrator.  Count Four alleges that Stubbs attempted to obtain dismissal of the Wyandotte County lawsuit by threatening to file a complaint against Jarvis with the Kansas Bar.  Count Five alleges that Stubbs advised another Kansas lawyer, Linus Baker, that he had retained a Kansas attorney and will "pursue Jarvis from all angles."  Count Six alleges that Stubbs and Latco entered into a civil conspiracy to injure and damage Jarvis's reputation in the legal community and to invade his privacy, and committed an overt act in furtherance of that conspiracy by filing a complaint with the Kansas Disciplinary Administrator. Plaintiffs' total prayer for damages exceeds $250,000.

---

[3]Doc. 1.

## II.     Legal Standards

### A.     Personal Jurisdiction Under Rule 12(b)(2)

A plaintiff bears the burden of establishing personal jurisdiction over a defendant.[4]  When a court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion.[5]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[6]  Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by the submitted affidavits.[7]  At the same time the Court does not have to accept as true conclusory allegations, nor incompetent evidence.  When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[8]  The court resolves all factual disputes in favor of the plaintiff.[9]  Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the

---

[4]*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[5]*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008).

[6]*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[7]*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[8]*Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

[9]*Dudnikov*, 514 F.3d at 1070.

4

moving party."[10]  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other consideration would render jurisdiction unreasonable.'"[11]

The Court's subject matter jurisdiction over this suit is based on diversity of citizenship. "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process."[12]  Because Kansas' long-arm statute  permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction analysis under Kansas law collapses into the inquiry required by the Due Process Clause.[13]

### B.      Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[14]  Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a

---

[10]*Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985).

[11]*OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[12]*Intercon*, 205 F.3d at 1247.

[13]*Id.*; *Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*, 896 F. Supp. 2d 1049, 1055 (D. Kan. 2012).

[14]*Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

reasonable likelihood of mustering factual support for these claims."[15]  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[16]  As the Supreme Court explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[17]  Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [18]

## III.    Discussion

Defendant Stubbs seeks dismissal on the grounds that the Court lacks personal jurisdiction and alternatively, for failure to state a claim.

### A.    Personal Jurisdiction Over Stubbs

The court must conduct a two-step analysis to determine whether the exercise of personal jurisdiction comports with due process: 1) the defendant must have minimum contacts with the forum state and 2) exercising jurisdiction must not offend traditional notions of fair play and substantial justice.[19]  Plaintiffs do not argue that Stubbs is subject to general personal

---

[15]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[16]*Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008).  "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

[17]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

[18]*Id*.

[19]*Emp'rs Mut. Cas. Co. v. Bartile Roofs,* Inc., 618 F.3d 1153, 1159–60 (10th Cir. 2010); *OMI Holdings*, 149 F.3d at 1091.

6

jurisdiction;[20] accordingly, the Court proceeds to the issue of specific jurisdiction.[21]  Specific jurisdiction is predicated upon a defendant's minimum contacts with the forum that give rise to the cause of action.[22]

### 1.        No-Imputed-Contacts Rule/Fiduciary Shield Doctrine

Stubbs argues that he did not personally enter into a contract with Plaintffs, but rather, all contacts by him were made in a representative capacity as an employee and agent of Latco. While his contacts on behalf of Latco may be sufficient to subject Latco to the jurisdiction of Kansas courts, Stubbs argues, such actions do not expose him to personal jurisdiction in Kansas. Stubbs submits the affidavit of Kimberly Pergeson, President of Latco, who attests that Stubbs was employed by Latco as its Director of Human Resources and General Counsel, and that he was not an officer of the corporation.[23]  Pergeson states that Stubbs was directed by Latco to hire an attorney in Kansas to register an Arkansas judgment against Harvest Construction Company and two of its corporate officers, and that Stubbs hired Plaintiffs to represent Latco in Kansas for this purpose.  Pergeson attests that all actions taken by Stubbs were taken in the course and scope of his employment and as an agent of Latco.  Jarvis counters with his own affidavit, which states that he contracted with Stubbs personally.[24]

A recent Tenth Circuit opinion, *Newsome v. Gallacher*, discussed the law regarding

---

[20]"[A] court may maintain general jurisdiction over a nonresident defendant, based on the defendant's continuous and systematic business contact with the forum state." *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (internal quotation marks omitted).

[21]*Id.*

[22]*Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996).

[23]Doc. 5, Ex. D.

[24]Doc. 6, Ex. A.

Case 5:14-cv-04096-JAR-GLR   Document 8   Filed 02/06/15   Page 8 of 18

jurisdiction over a corporation's employees.[25]  The "no-imputed contacts" rule states that "[j]urisdiction over a corporation in a particular forum does not automatically confer jurisdiction over that corporation's employees."[26]  The court noted that by contrast, the similar "fiduciary shield doctrine gives even greater protection to employees of companies."[27]  That doctrine maintains that even if a particular corporate employee has substantial contacts with the forum state, those contacts will not count against the employee in the personal jurisdiction analysis so long as the employee acted solely on the corporation's behalf.[28]  The *Newsome* decision resolved any confusion between the two concepts, explaining that while the "no-imputed contacts rule is integral to the minimum contacts due process test," *i.e.* federal law, the "fiduciary shield doctrine [ ] only exists as a matter of state law."[29]

Thus, the threshold question is whether Kansas recognizes the fiduciary shield doctrine. Stubbs does not cite, nor could the Court locate any Kansas law recognizing the fiduciary shield doctrine.[30]  However, Kansas courts have recognized that Kansas's long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent permitted by the United States

---

[25]722 F.3d 1257 (10th Cir. 2013).

[26]*Id.* at 1275 (citation, internal quotations, and alterations omitted).  *See also Ten Mile Indus. Park v. W. Plain Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987) ("[T]he corporate defendants' contacts cannot be attributed to the [corporate officers] . . . . Jurisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself.").

[27]*Newsome*, 722 F.3d at 1275.

[28]*Id.*

[29]*Id.*

[30]Stubbs cites the case of *Mr. Cinnamon of Kan., Inc. v. Hall*, 202 P.3d 734 (Kan. Ct. App. 2009).  In that case, however, the Kansas Court of Appeals applied the no-imputed-contacts rule in declining to exercise personal jurisdiction over the owner/officer of a corporation where there was no evidence that he personally negotiated the contract at issue in the lawsuit.  *Id.* at 740–43.

8

Constitution.[31]  Because the fiduciary shield doctrine does not limit the exercise of personal

jurisdiction under the Due Process Clause,[32] the Court will consider all of Stubbs' contacts with

Kansas, regardless of whether those contacts occurred in a corporate or individual capacity.[33]

### 2.    Minimum Contacts

 The Supreme Court has instructed that the minimum contacts standard requires, first,

that the out-of-state defendant must have "purposefully directed" its activities at residents of the

forum state, and second, that the plaintiff's injuries must "arise out of" defendant's forum-related

activities.[34]

In evaluating the "purposefully directed" element, the Tenth Circuit has explained:

> The first element can appear in different guises.  In the tort
> context, we often ask whether the nonresident defendant
> "purposefully directed" its activities at the forum state; in contract
> cases, meanwhile, we sometimes ask whether the defendant
> "purposely availed" itself of the privilege of conducting activities
> or consummating a transaction in the forum state.  In all events, the
> shared aim of "purposeful direction" doctrine has been said by the
> Supreme Court to ensure that an out-of-state defendant is not
> bound to appear to account for merely "random, fortuitous, or
> attenuated contacts" with the forum state.[35]

Because Plaintiffs allege both contract and tort causes of action, the Court will look to case law

interpreting both the "purposefully directed" and "purposefully availed" requirements.

---

[31]*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[32]*Newsome*, 722 F.3d at 1275.

[33]*See Carskadon v. Diva Int'l, Inc.*, No. 12-cv-1886-RM-KMT, 2014 WL 403237, at *6 (D. Colo. Feb. 26, 2014) (discussing *Newsome* and adopting same approach where no Colorado law recognizing fiduciary shield doctrine).

[34]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

[35]*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071(10th Cir. 2008) (internal citations omitted).

### a.       Purposeful Direction

In a tort-based lawsuit, "purposeful direction" has three elements: (a) an intentional action (b) expressly aimed at the forum state, (c) with knowledge that the brunt of the injury would be felt in the forum state.[36]  Plaintiffs have pleaded enough facts at this stage of the litigation to show that Stubbs' actions were intentional and that he knew Plaintiffs would be harmed in Kansas.  Therefore, the Court's analysis focuses on the second element—whether Stubbs "expressly aimed" his activity at Kansas.

The "expressly aimed" prong focuses on a defendant's intentions and seeks to determine the "focal point" of defendant's actions.[37]  The plaintiff's residence in the forum, and suffering harm there, standing alone, are insufficient.[38]  The court should evaluate both the quantity and the quality of the defendant's contacts with the forum state.[39]  The Tenth Circuit has adopted a more restrictive approach to the expressly aiming test, holding that the forum state itself must be the focal point of the defendant's intentional action.[40]  Even a tort intentionally committed against a known forum resident is insufficient, standing alone, to satisfy the "expressly aimed" requirement.[41]

---

[36]*Newsome*, 722 F.3d at 1264–65, 1268.

[37]*Dudnikov*, 514 F.3d at 1074–75.

[38]*Schrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011).

[39]*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 n.5 (10th Cir. 2005); *OMI Holdings*, 149 F.3d at 1092.

[40]*Schrader*, 633 F.3d at 1244.

[41]*See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections.  Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis.  It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.") (internal citations omitted).

Plaintiffs allege four tort claims against Stubbs: fraud in the inducement;  extortion by threatening to file a disciplinary complaint with the Kansas bar if Jarvis did not dismiss the case filed in Wyandotte, County; extortion by hiring a Kansas attorney to "pursue Jarvis from all angles;" and civil conspiracy with Latco to injure and damage Jarvis's reputation in the legal community.  Kansas was the focal point of all of Stubbs' alleged tortious conduct—the alleged fraudulent inducement was to register a judgment in Kansas courts and the remaining act involved Jarvis's reputation and standing as a lawyer in Kansas.  Accordingly, the Court finds that Stubbs purposely directed his alleged activities at the forum state of Kansas.

### b.    Purposeful Availment

The mere existence of a contract with a Kansas citizen is insufficient to establish the requisite minimum contacts in the forum state.[42]  Although agreements alone are not sufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and sanctions in the other state for the consequences of their activities.'"[43]  The court must examine the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[44]  Something more, like a plan that implies future activities in the forum state is needed.[45]

Stubbs' argument that his actions in Kansas were performed as a corporate employee and

---

[42]*See Burger King Corp.*, 471 U.S. at 478; *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1287 (10th Cir. 2007).

[43]*Marcus Food Co. v. DiPanfilio*, 671 F.3d 1159, 1166 (10th Cir. 2011) (quoting *Burger King*, 471 U.S. at 473).

[44]*Id.* at 1166–67.

[45]*Burger King*, 471 U.S. at 479.

do not subject him personally to jurisdiction fails.  While jurisdiction over a corporate representative cannot be predicated on jurisdiction over the corporation itself, the liability of Stubbs under this complaint is not predicated on his status as a corporate employee, but on his own individual acts in soliciting legal representation from Plaintiffs.  Plaintiffs contend that their contract for legal services was with Stubbs, for Jarvis to assist Stubbs in the registration of the Arkansas judgment in Kansas.  The Court must resolve all factual disputes in favor of Plaintiffs.[46]  The record shows Stubbs personally solicited business on behalf of Latco from Jarvis and his law firm.  These are contacts in Kansas by Stubbs himself, not contacts that have been imputed to him on account of actions of the corporation.[47]

The Court finds that all of the facts taken together support the finding of sufficient minimum contacts.  These facts, while not dispositive in themselves, are not dismissed in isolation, but are combined to determine whether a defendant has purposefully availed himself to the forum such that he should reasonably anticipate being haled into court there.[48]  Even though the existence of a contract alone is not dispositive, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state."[49]  Here, Stubbs sought out Jarvis's legal services that were specific to Kansas—registering an Arkansas judgment in Kansas courts.  Courts consider a defendant's solicitation as a significant factor in determining minimum contacts with the state of

---

[46]*Dudnikov*, 514 F.3d at 1070 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[47]*See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102–03 (10th Cir. 2009); *cf. Mr. Cinnamon of Kan., Inc. v. Hall*, 202 P.3d 734, 740–43 (Kan. Ct. App. 2009).

[48]*Burger King*, 471 U.S. at 473–76.

[49]*TH Agric.& Nutrition, LLC v. Ace European Group, Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007).

Kansas.[50]  Thus, the Court finds that Plaintiffs have asserted facts demonstrating that Stubbs has committed acts that establish minimum contacts with the state of Kansas.

### 3.      Fair Play and Substantial Justice

Having determined that Stubbs meets the minimum contacts test, the Court must also ascertain that the exercise of personal jurisdiction over him does not offend "traditional notions of fair play and substantial justice."[51]  The defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[52]  This requires the weighing of the following factors: (1) the burden on defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.[53]  Stubbs does not address these factors in his motion, and thus has not met his burden.  Thus, the Court concludes that it may properly exercise jurisdiction over Stubbs.

### B.      Failure to State a Claim

Alternatively, Stubbs moves to dismiss each of Plaintiffs' six claims for failure to state a legitimate claim for relief.  Along with the motion and response, the parties submit evidence

---

[50]*See, e.g., Cargill Meat Solutions Corp. v. Premium Beef Feeders, LLC*, No. 13-cv-1168-EFM, 2014 WL 172197, at *3 (D. Kan. Jan. 15, 2014) (noting that defendants sought plaintiff's business and continued their contractual relationship well over a year); *Hutton & Hutton Law Firm, LLC v. Girardi & Keese*, No. 13-1115-RDR, 2014 WL 36313, at *7 (D. Kan. Jan. 6, 2014) (finding that where contact was unsolicited by plaintiff, defendant's solicitation of plaintiff firm was significant factor in determining minimum contacts).

[51]*OMI Holdings*, 149 F.3d at 1091.

[52]*Burger King*, 471 U.S. at 477.

[53]*Newsome*, 722 F.3d at 1271.

outside the pleadings—Pergeson and Jarvis's affidavits.  Generally, "when matters outside the pleadings are presented to and not excluded by the court [in deciding a motion under Rule 12(b)(6)], the motion must be treated as one for summary judgment under Rule 56."[54]  The court has discretion to accept or reject documents attached to a motion to dismiss pursuant to Rule 12(b)(6).[55]  The Court does not consider either affidavit in determining whether Plaintiffs' Petition fails to state a claim upon which relief may be granted.

### 1.    Breach of Contract

Stubbs argues that Plaintiffs' claim for failure to pay legal fees is barred by the Kansas Statute of Frauds, which requires an obligation for the debt of another to be in writing in order to be enforceable.[56]  Stubbs contends that the Petition does not allege that any instrument in writing exists that obligates him to pay the Latco debt, and thus Count One must be dismissed.  The Petition alleges, however, that the agreement was made between the two attorneys, Jarvis and Stubbs, for Jarvis to assist Stubbs in registering the judgment in Kansas.  Thus, the Petition states a plausible claim for breach of contract, and Stubbs' motion is denied.[57]

---

[54]Fed. R. Civ. P. 12(d).

[55]*Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000).

[56]K.S.A. 33-106.

[57]The Court notes that Plaintiffs do not assert a piercing the corporate veil or alter ego claim; Defendant does not move for dismissal on these grounds under Rule 12(b)(6).

## 2.      Good Faith and Fair Dealing

Kansas law implies a duty of good faith and fair dealing in every contract.[58]  To prevail upon such a claim, a plaintiff must "(1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term in the contract 'which the defendant [ ] allegedly violated by failing to abide by the good faith spirit of that term.'"[59]

In this case, Plaintiffs assert four bases as to Stubbs' breach of the implied duty of good faith and fair dealing: failing to advise Plaintiffs of the mathematical error in Plaintiffs' bill for legal services; failing to return Jarvis's phone call; failure to pay that part of the bill that was accurately owed, after discovering the error; and offering to pay the correct sum in exchange for dismissal of the Wyandotte County lawsuit.  The Petition alleges that Plaintiffs contracted with Stubbs to perform legal services at the agreed hourly rate of $150, plus expenses.  None of these allegations are based on a violation of any term in the agreement to provide legal services.  Therefore, they are not sufficient to state a breach of the duty of good faith and fair dealing under Kansas law, and Stubbs' motion to dismiss Count Two is granted.

## 3.      Fraud in the Inducement

Plaintiffs allege that Stubbs told Jarvis that Latco was a large, established, multi-state manufacturer, financially secure and stable.  Plaintiffs assert that these statements were untrue when made, and that Jarvis relied upon these statements to his detriment because he would have required a retainer before starting representation of Stubbs.  Stubbs argues that the Petition does

---

[58]*Law v. Law Co. Bldg. Assocs.*, 210 P.3d 676, 682 (Kan. Ct. App. 2009).

[59]*Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996) (quoting *Pizza Mgmt. v. Pizza Hut*, 737 F. Supp. 1154, 1184 (D. Kan. 1990)).

not allege that Latco was financially secure at the time of the contract and that the fees were not paid because they were excessive.  Although Plaintiffs set out the "who, what, where, and when" of the alleged fraud,[60] the Court agrees that the Petition does not assert a plausible claim against Stubbs.  Indeed, Plaintiffs vehemently argue that the agreement to provide legal services was with Stubbs, not Latco, and thus any representations about Latco's financial status have no bearing on Stubbs' alleged agreement to pay Plaintiffs.  Count Three is dismissed.

### 4. Tortious Acts

Count Four alleges that Stubbs committed the tortious act of extortion, coercion, and intimidation when he attempted to obtain a dismissal of the Wyandotte County lawsuit by threatening to report Jarvis to the Kansas Disciplinary Administrator.  Count Five alleges that Stubbs committed the tortious act of extortion, coercion, and intimidation by informing attorney Linus Baker that Latco and Stubbs would be hiring an attorney to defend the Wyandotte County litigation and that the would pursue Jarvis "from all angles."  Stubbs states that he did in fact file a complaint against Jarvis, and there is nothing actionable about a party to litigation informing the filing attorney that there will be repercussions from an improper lawsuit.  Stubbs further argues that there is no civil cause of action for extortion in Kansas.

While it appears that they attempt to assert a claim for abuse of process,[61] Plaintiffs do not identify or set forth any elements of a specific claim in the Petition, nor do they address Stubbs' arguments in their response.  The Court declines to construct a legal theory on Plaintiffs' behalf and accordingly, Counts Four and Five are dismissed.

---

[60]*Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1153 (D. Kan. 2006).

[61]*See Jones v. Noblit*, 260 P.3d 1249, at *10 (Table) (Kan. Ct. App. 2011) (discussing elements for claim of abuse of process).

16

### 5.        Civil Conspiracy

Finally, in Count Six Plaintiffs allege that Latco and Stubbs engaged in a civil conspiracy

to file a grievance with the Office of Disciplinary Administrator, the object of which was "to

injure and damage the legal reputation of Jarvis in the legal community and to injure his peace of

mind and invade his privacy."  Stubbs moves to dismiss on grounds of immunity, citing Supreme

Court Rule 223.  That rule, entitled "Immunity," states:

> Complaints, reports, or testimony in the course of disciplinary
> proceedings under these Rules shall be deemed to be made in the
> course of judicial proceedings.  All participants shall be entitled to
> judicial immunity and all rights, privileges and immunities
> afforded public officials and other participants in actions filed in
> the courts of this state.[62]

Thus, Stubbs is entitled to judicial immunity from any lawsuit based upon the filing of their

complaint against Jarvis with the Kansas Disciplinary Administrator.  Indeed, as Stubbs points

out, Jarvis himself was a party to similar litigation that he filed against a former client in the case

of *Jarvis v. Drake*, where the Kansas Supreme Court clearly settled this issue.[63]  Count Six is

dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant L. David Stubbs'

Motion to Dismiss (Doc. 5) is **granted in part and denied in part**; Defendant's motion is

denied under Rule 12(b)(2); Defendant's motion under Rule 12(b)(6) is granted with respect to

Counts Two through Six, and denied with respect to Count One.

**IT IS SO ORDERED.**

Dated: February 6, 2015

---

[62]Kansas Sup. Ct. Rule 223 (2014).

[63]830 P.2d 23, 28 (Kan. 1992) (finding Rule 223 was not ambiguous and  constitutional).

17

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE